1

2

3

4

5

6

7

8

9                          UNITED STATES DISTRICT COURT

10                         EASTERN DISTRICT OF CALIFORNIA

11

| | |
|---|---|
| TERESA JUNKERSFELD, an individual on behalf of herself and others similarly situated, | Case No.: 1:19-cv-00236−EPG |
| Plaintiff, | ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND SETTING FINAL APPROVAL HEARING |
| v. | |
| MEDICAL STAFFING SOLUTIONS, INC., | (ECF No. 43) |
| Defendant. | |

Before the Court is Plaintiff Teresa Junkersfeld's ("Plaintiff") motion for preliminary approval of a class action settlement. (ECF No. 43.) The parties have consented to the jurisdiction of a United States Magistrate Judge for all purposes, including entry of final judgment. (ECF Nos. 13, 16-17.) For the following reasons, the Court will grant the motion and set a final approval hearing.

**I.      BACKGROUND**

**A.      Procedural History**

Defendant Medical Staffing Solutions, Inc. ("Defendant") is a staffing company that employs hourly healthcare workers on short-term travel assignments at medical facilities throughout California and elsewhere. (ECF No. 43-1 at 6.) Plaintiff was employed by Defendant

in Oakdale, California between January 2016, and April 2016. (*Id.* at 7.)

Plaintiff filed her complaint commencing this action on February 19, 2019. (ECF No. 1.) Plaintiff alleges that Defendant underpaid overtime by excluding the value of housing and meals payments and incidentals payments from workers' regular rates of pay. (*See id.*) The complaint asserts claims for: 1) failure to pay overtime wages pursuant to California Labor Code §§ 510, 1194; 2) unfair business practices pursuant to California Business & Professions Code §§ 17200, *et seq.*; 3) waiting time penalties pursuant to California Labor Code § 203; and 4) violation of the Fair Labor Standards Act pursuant to 29 US.C. §§ 201, *et seq.* (*Id.*) Defendant filed an answer on May 3, 2019. (ECF No. 5.)

In December of 2019, following formal and informal discovery, the parties reached a tentative settlement agreement contingent on Defendant's production of confirmatory discovery. (ECF No. 43-1 at 6.) After Defendant produced the confirmatory discovery, Plaintiff exercised her right to void the settlement. (*Id.*) On June 4, 2020, at the parties' request, the Court stayed the case pending the Ninth Circuit's decision in *Clarke v. AMN Services, LLC,* 987 F.3d 848 (9th Cir. 2021). (ECF No. 27.) The Court lifted the stay on March 10, 2021. (ECF No. 32.) The parties subsequently resumed settlement negotiations with the assistance of mediator Michael Russell. (*Id.*) In August of 2021, following a full day of mediation, the parties reached an agreement on the material terms of a class settlement. (*Id.*) The parties executed a long-form settlement agreement in October of 2021. (*Id.*)

On October 21, 2021, Plaintiff filed the motion for preliminary approval of a class action settlement. (ECF No. 43.) Plaintiff asks the Court to preliminarily approve the terms of the settlement agreement, approve the proposed class notice, certify the settlement class, appoint a settlement administrator, and schedule a final approval hearing. (ECF Nos. 43, 43-1 at 23, 43-6.) On October 26, 2021, Defendant filed a statement of non-opposition to the motion. (ECF No. 44.) The Court held a hearing on the motion on November 19, 2021. (ECF No. 46.) The parties appeared telephonically through counsel. (*Id.*)

**B.      Proposed Settlement**

The parties' settlement agreement defines the class as:

All non-exempt hourly healthcare professionals employed by MSSI in California

1   at any time from February 19, 2015 and August 5, 2021 who worked overtime and
    received a meals and incidentals payment and/or a housing payment.

2

3   (ECF No. 43-4 at 4, 10.) According to the motion, there are 150 individuals in the settlement

4   class. (ECF No. 43-1 at 9.)

5        Defendant agrees to pay a non-reversionary settlement amount of $650,000.00, exclusive

6   of Defendant's share of payroll taxes owed on the "wage" portion of the settlement amount,

7   which Defendant will pay separately.[1] (ECF No. 43-4 at 11.) This amount includes a $5,000.00

8   service award to Plaintiff, attorney's fees not to exceed $216,666.66, attorney's costs not to

9   exceed $15,000.00, and settlement administration costs not to exceed $20,000.00. (*Id.* at 12-

10  13.) A total of $20,000.00 from the gross settlement is allocated to the payment of Private

11  Attorney General Act ("PAGA") penalties, $15,000.00 of which is paid to the Labor and

12  Workforce Development Agency ("LWDA") and $5,000.00 of which is included in the net

13  settlement amount. (*Id.* at 12-13.) After these deductions, the balance of $432,500.00 will be
    distributed to class members. (ECF No. 43-1 at 11.)

14       Payments to settlement class members will be made pro rata based on a percentage equal

15  to the number of each class member's overtime hours worked during the class period divided

16  by the total number of all settlement class members' overtime hours worked during the class

17  period. (ECF No. 43-4 at 12.) Each settlement class member's respective share will be

18  calculated by multiplying the net settlement amount by this fraction. (*Id.*) According to the

19  motion, the average individual settlement payment is estimated to be $2,883.00. (ECF No. 43-

20  1 at 11.)

21        All class members, except those who opt-out of the settlement, will automatically

22  receive their eligible share without having to submit a claim form. (ECF No. 43-4 at 12.) Any

23  shares that are not distributed because the class member elected to opt-out of settlement will be

24  redistributed on a pro rata basis to the participating settlement class members. (*Id.*) Checks

25  issued to participating settlement class members will remain negotiable for 180 days from the

26  date of mailing. (*Id.* at 14-15.) The settlement administrator will void any check that remains

27  _____

    [1] The settlement agreement allocates 1/3 of the settlement amount as wages to be characterized as W-2 income and
28  2/3 as interest and penalties to be characterized as 1099 income. (ECF No. 43-4 at 14.)

uncashed after this time and the uncashed funds will be sent to the California State Controller's Office pursuant to California's procedures for unclaimed property. (*Id.* at 15.)

Defendant will provide the settlement administrator with the class list, including overtime hours worked and contact information, within 14 calendar days of preliminary approval of the settlement. (ECF No. 43-4 at 15.) The settlement administrator will mail the notice to all class members by first class mail within five business days of receipt of the class list. (*Id.*) Before mailing the notice, the settlement administrator will process the class list against the National Change of Address Database maintained by the United States Postal Service. (*Id.* at 16.) Notice packets that are not returned "undeliverable" will be presumed to have been delivered. (*Id.*) If a notice packet is returned undeliverable and a forwarding address is provided then the settlement administrator will re-mail notice within three business days. (*Id.*) If no forwarding address is provided, the settlement administrator will employ a more substantive skip-tracing procedure to obtain updated address information and periodically remail the notice to those individuals for whom a new address is located. (*Id.*) If the notice is returned after skip-tracing and remailing occurs, there will be no further skip-tracing but the settlement class member will still be bound by the terms of the settlement. (*Id.*)

Settlement class members may opt out of the settlement, object to the settlement, or dispute the stated overtime hours worked within 45 days from the original mailing date of the notice. (ECF No. 43-4 at 16.) Opt-out requests and objections must be sent to the settlement administrator and will not be honored if postmarked after this deadline. (*Id.* at 16.) Settlement class members who opt-out of the settlement are not eligible to recover a share of the net settlement amount and will have no standing to object to the settlement. (*Id.*) Plaintiff provides a proposed notice outlining the opt-out and objection processes and providing information regarding the final fairness hearing. (ECF No. 43-5.)

The settlement agreement releases Defendant and any parent, subsidiary, affiliate, predecessor or successor, agent, employee, officer, director, attorney, and healthcare facility clients from the following claims by settlement class members:

> any and all claims arising between February 19, 2015 and the preliminary approval date that were asserted in the operative Complaint on behalf of the Settlement

1
2
3

> Class or that could have been pled based on the legal theories and/or factual allegations in the operative Complaint, including, without limitation, all individual and representative claims for unpaid wages, statutory penalties, civil penalties, PAGA penalties, or other forms of relief, based on the failure to include per diem benefits in the regular rate.

4

(ECF No. 43-4 at 7.) Plaintiff also agrees to a broader general release of claims:

5
6
7
8
9
10
11
12
13
14

> As a material term of this Agreement, Named Plaintiff Teresa Junkersfeld, in her individual capacity and with respect to her individual claims only, hereby agrees to also generally release Defendant and any parent, subsidiary, affiliate, predecessor or successor, including but not limited to all agents, employees, officers, directors, attorneys, and healthcare facility clients thereof, from all claims, demands, rights, liabilities and causes of action of any and every nature and description whatsoever, known or unknown, asserted or that might have been asserted, including a waiver of California Civil Code § 1542. With respect to the General Release, Named Plaintiff Teresa Junkersfeld stipulates and agrees that, upon the execution of this Agreement, she shall be deemed to have, and by operation of the Final Judgment shall have, expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights and benefits of Section 1542 of the California Civil Code, or any other similar provision under state or federal law as to the generally released claims. Section 1542 provides as follows:
>
> > A GENERAL RELEASE DOES NOT EXTENT TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, AND THAT IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

15

(ECF No. 43-4 at 18-19.)

16

## II.   LEGAL STANDARD

17
18
19
20
21
22
23

Federal Rule of Civil Procedure 23(e) requires judicial review and approval of any proposed class action settlement agreement.  This requirement is in place because "the parties that are present and settling the case — class counsel, the class representatives, and the defendants — are proposing to compromise the rights of absent class members," and judicial review "aims to ensure that the interests of these absent class members are safeguarded." *Lusk v. Five Guys Enterprises LLC*, 2019 WL 7048791, at *1 (E.D. Cal. Dec. 23, 2019) (quoting *Newberg on Class Actions* § 13:40 (5th ed.)).

24
25
26
27
28

Rule 23(e)(1), as amended in 2018, requires the movant to "provide the court with information" that shows that "the court will likely be able to" make two separate determinations.  Fed. R. Civ. P. 23(e)(1).  First, approval of the settlement agreement is warranted under Rule 23(e)(2).  Second, class certification is warranted under Rule 23(a)-(b) "for purposes of judgment on the proposal."  Fed. R. Civ. P. 23(e)(1)(B)(ii).

As for the first determination, Rule 23(e)(2) authorizes final approval of class action settlement agreement only if the movant shows that the settlement agreement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).  To determine whether the settlement agreement is fair, reasonable, and adequate, the Court must consider four factors.  First, whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A).  Second, whether "the proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B).  Third, whether "the relief provided for the class is adequate," considering "(i) the costs, risks and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment;" and (iv) any agreement made in connection with the proposal. Fed. R. Civ. P. 23(e)(2)(C).  Fourth, whether "the proposal treats class members equitably relative to each other."  Fed. R. Civ. P. 23(e)(2)(D).  The first and second factors are viewed as "procedural" in nature, and the third and fourth factors are viewed as "substantive" in nature.  Fed. R. Civ. P. 23(e)(2) Advisory Committee's note to 2018 amendment.

The Ninth Circuit has also identified eight additional factors the Court may consider, many of which overlap substantially with Rule 23(e)'s four factors:

> The strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1026 (9th Cir. 1998); *see also Flores v. Dart Container Corp.*, 2021 WL 1985440, at *4 (E.D. Cal. May 18, 2021) (applying the *Hanlon* factors in determining whether a proposed settlement is fair, adequate, and reasonable at the preliminary approval stage).[2]

---

[2] The Court must also "review and approve" settlement of the class members' PAGA claims along with their class claims. *See* Cal. Lab. Code § 2669(k)(2); *Sakkab v. Luxottica Retail N. Am., Inc.,* 803 F.3d 425, 435-36 (9th Cir. 2015). While "PAGA does not establish a standard for evaluating PAGA settlements," *Rodriguez v. RCO Reforesting, Inc.*, 2019 WL 331159 at *4 (E.D. Cal. 2019) (citing *Smith v. H.F.D. No. 55, Inc.,* 2018 WL 1899912, at *2 (E.D. Cal. Apr. 20, 2018)), a number of district courts have applied the *Hanlon* factors to evaluate PAGA settlements. *Flores,* 2021 WL 1985440, at *4, fn. 3 (citations omitted).

6

As for the second determination as to whether class certification is warranted under Rule 23(a)-(b), the Court must determine whether it is "likely" that it will be able to "certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1). Accordingly, the Court must review the class certification standards under Rule 23(a)-(b), and based on those standards the Court must "reach a tentative conclusion that it will be able to certify the class in conjunction with final approval of the settlement." *Lusk,* 2019 WL *Newberg on Class Actions* § 13:18 (5th ed.).

For class certification, the class "must meet the four threshold requirements of Federal Rule of Civil Procedure 23(a): numerosity, commonality, typicality, and adequacy of representation." *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 512 (9th Cir. 2013) (citing Fed. R. Civ. P. 23(a); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). The proposed class must also satisfy the requirements of Rule 23(b), which defines the three different types of classes allowed. Fed. R. Civ. P. 23(b); *Leyva*, 716 F.3d at 512. The plaintiff bears the burden of demonstrating that the requirements of Rule 23 have been satisfied as to the proposed class. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011); *Narouz v. Charter Commc'ns, LLC*, 591 F.3d 1261, 1266 (9th Cir. 2010).

## III.   DISCUSSION

## A.   The Settlement Terms are Fair, Reasonable, and Adequate

1.   The *Hanlon* Factors

As noted above, the Court first considers whether the settlement is fair, reasonable, and adequate pursuant to Rule 23(e). Plaintiff contends that the *Hanlon* factors favor preliminary approval of the settlement. (ECF No. 32-1 at 17-22.) The Court agrees.

*The Strength of Plaintiff's Case and the Risk and Expense of Further Litigation*

Plaintiff explains that the dispositive issue in this case is whether payments for housing, meals, and incidentals constitute "reasonable payments for traveling expenses, or other expenses, incurred by an employee in furtherance of his employer's interest and properly reimbursable by the employer" under 29 U.S.C. § 207(e)(2). (ECF No. 43-1 at 18.) The Ninth Circuit has declined to hold that these types of payments must always be included in the regular rate, and it's a case-specific inquiry that turns on whether the payments reimburse for

expenses or compensate employees for hours worked. (*Id.* at 18-19.) *See Clarke,* 987 F.3d at 856.

Here, payments are tied to the number of hours worked, which Plaintiff contends is a particularly relevant factor that weighs in her favor. (ECF No. 43-1 at 18.) However, there is no evidence that Defendant makes housing and meals and incidentals payments to employees who do not travel from home and incur expenses, or that it allows employees to bank extra hours worked in one week to offset missed hours in another week, which weigh against a finding that the payments should be included in employees' regular rates. (*Id.* at 19.) Additionally, because the relevant test is case-specific, there are risks and expenses to further litigation and any judgment would likely be appealed and could potentially be reversed. (*Id.*)

In light of Plaintiff's explanations, the Court finds that the *Hanlon* factors concerning the strength of Plaintiff's case and the risks and expenses of further litigation weigh in favor of preliminary approval of the settlement.

*The Amount Offered in Settlement*

The proposed settlement recovers $650,000.00, which Plaintiff's counsel estimates is approximately 74 percent of the total amount of overtime that could be recovered if the claims were successfully litigated. (ECF No. 43-1 at 19.)

At the hearing on the motion, Plaintiff's counsel explained that Defendant's maximum exposure was calculated to be $875,512.00. Plaintiff obtained the number of overtime and double time hours that the 150 class members worked during the class period, as well as their and hourly per diem rates, from discovery Defendant provided. Plaintiff's counsel divided the weekly per diem rate by the weekly hours worked and then multiplied this figure by 1.5 for overtime hours worked and by two for double time hours worked. [3] According to Plaintiff's counsel, the $875,512.00 potential maximum recovery was discounted to the $650,000.00 settlement amount in light of Defendant's defenses. Particularly, *Clarke* relied on facts that are not present in the instant case, including the fact that per diems were paid to all employees

---

[3] Plaintiff estimated that waiting penalties likely would not be recovered for two reasons. First, Defendant is a temporary staffing agency and waiting time penalties do not apply to temporary services employers under the California Labor Code. Second, Defendant argues that these violations occurred before *Clarke* and it was unknown what test to apply. (*See* ECF No. 43-1 at 20.)

1   regardless of traveling and employees were allowed to bank hours worked to avoid an offset.

2   These factors could be considered dispositive.

3       In determining whether the amount offered is fair and reasonable, a court compares the

4   proposed settlement to the best possible outcome for the class. *See Rodriguez v. W. Publ'g*

5   *Corp.*, 563 F.3d 948, 964 (9th Cir. 2009). Here, in light of Defendants' defenses and the

6   circumstances of the case, the Court finds that the settlement amount of $650,000.00,[4]

7   representing approximately 74 percent of the best possible outcome of the class, is reasonable

8   and within the range of possible approval. Thus, this factor favors preliminary approval of the

9   settlement.

10       *The Extent of Discovery Completed*

11       The motion explains that, prior to reaching settlement, Plaintiff engaged in formal and

12   informal discovery regarding the relevant policies, Defendant's defenses to liability and class

13   certification, and potential damages. (ECF No. 43-1 at 7.) Plaintiff served requests for

14   admissions, interrogatories, and requests for production of documents, which led to Plaintiff

15   obtaining Defendant's corporate policies regarding housing payments, meals and incidentals

16   payments, and overtime payments. (*Id.* at 8.) Plaintiff also obtained the average hourly wages,

17   weekly meals and incidentals payments, and weekly housing payments paid to putative class

18   members. (*Id.*) Plaintiff also informally requested and obtained the total number of overtime

---

19   [4] Of the $650,000.00 settlement amount, the parties have allocated $20,000.00 to PAGA penalties. A total of

20   $15,000.00, or 75 percent of the PAGA penalties, will be paid to the LWDA and $5,000.00, or 25 percent of the
     PAGA penalties, will be distributed to the class. Although Plaintiff's complaint does not allege a PAGA claim (*see*

21   ECF No. 1), the settlement agreement specifically releases class members' claims for PAGA penalties based on
     Defendant's failure to include per diem benefits in the regular rate (*see* ECF No. 43-4 at 7). Plaintiff's briefing
     does not address the reasonableness of the PAGA penalty amounts. (*See* ECF No. 43-1.) However, the PAGA

22   settlement is approximately 3% of the proposed total settlement amount, which is similar to settlements that have
     been approved by other courts. *See, e.g., Ahmed v. Beverly Health & Rehab. Servs., Inc.*, 2018 WL 746393, at *10

23   (E.D. Cal. 2018) (approving PAGA settlement of $4,500, or 1% of the total settlement amount); *Hicks v. Toys 'R'
     Us–Delaware, Inc.*, 2014 WL 4703915, at *1 (C.D. Cal. 2014) (approving PAGA settlement of $5,000 or 0.12% of

24   the total settlement amount); *Schiller v. David's Bridal, Inc*., 2012 WL 2117001, at *2 (E.D. Cal. 2012) (approving
     PAGA settlement of $7,500 or 0.14% of the total settlement amount); *Franco v. Ruiz Food Prods., Inc.*, 2012 WL

25   5941801 at *14 (E.D. Cal. 2012) (approving PAGA settlement of $10,000, or 0.4% of total settlement amount);
     *Garcia v. Gordon Trucking*, 2012 WL 5364575 at *3 (E.D. Cal. 2012) (approving PAGA settlement of $10,000 or

26   0.27 % of the total settlement amount); *Munoz v. UPS Ground Freight, Inc.*, 2009 WL 1626376, at *1 (N.D. Cal.
     2009) (approving PAGA settlement of $60,000 or 2% of the total settlement amount); *Hopson v. Hanesbrands Inc.*,

27   2009 WL 928133, at *9 (N.D. Cal. 2009) (approving PAGA settlement of $1,500 or .037% of the total settlement
     amount); *Nordstrom Com'n Cases*, 186 Cal. App. 4th 576, 589 (2010) (approving PAGA settlement and release

28   allocating $0 to PAGA claim).

hours and double time hours worked by the putative class. (*Id.* at 8.) The parties also reached a tentative settlement in December of 2019 conditioned on certain confirmatory discovery, which Defendant provided. (*Id.*)

"Class action settlements are favored more when a considerable amount of discovery has been conducted, and this is because the considerable discovery 'suggests that the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case.'" *Lusk v. Five Guys Enterprises LLC,* 2019 WL 7048792, at *7 (E.D. Cal. Dec. 23, 2019) (quoting *Adoma v. Univ. of Phoenix, Inc.*, 913 F. Supp. 2d 964, 977 (E.D. Cal. 2012)); *see also Millan v. Cascade Water Serv*s., Inc., 310 F.R.D. 593, 610-11 (E.D. Cal. 2015) (denying preliminary approval of a class settlement where class counsel relied heavily on information provided by the named plaintiff and defendant, assumed the number of violations, and did not present documentation regarding the extent of discovery); *cf. In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000), *as amended* (June 19, 2000) (finding that preliminary approval was appropriate where extensive formal discovery had not been completed but counsel presented the district court with documentation that they had conducted significant informal investigation, discovery, and research).

The Court finds that the parties conducted sufficient formal and informal discovery before agreeing to the proposed settlement amount. The amount of discovery conducted suggests that the settlement amount was reached based on a full understanding of the legal and factual issues in the case. This factor therefore weighs in favor of preliminary approval.

*The Experience and Views of Counsel*

Plaintiff submits a declaration from counsel Kye D. Pawlenko in support of the motion. (ECF No. 43-3.) Mr. Pawlenko describes his and his law partner's education and experience handling employment, wage and hour, and class action lawsuits. (*Id.* at 3-4.) The settlement was reached after a full day of mediation with mediator Michael Russell. (*Id.* at 4-5.) Mr. Pawlenko describes the formal and informal discovery conducted prior to settlement as well as his valuation of the class claims in light of the strengths and weaknesses of the case. (*Id.* at 4-6.) Mr. Pawlenko's office recommends preliminary approval of the settlement as fair, adequate, and reasonable given the strengths and weaknesses of the case, and the risks of

1    further litigation. (*Id.* at 6.)

2        The Court finds that the experience and views of counsel favor preliminary approval of

3    the settlement as fair, reasonable, and adequate. *See Riker v. Gibbons*, No. 3:08-CV-00115-

4    LRH, 2010 WL 4366012, at *2 (D. Nev. Oct. 28, 2010) ("An initial presumption of fairness is

5    usually involved if the settlement is recommended by class counsel after arm's-length

6    bargaining.") (quoting 4 Alba Conte & Herbert B. Newberg, Newberg on Class Actions §

7    11:42 (4th ed.2002)); *see also Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221

8    F.R.D. 523, 527–28 (C.D. Cal. 2004) ("A settlement following sufficient discovery and

9    genuine arms-length negotiation is presumed fair." (citations omitted)).

10   2.    Attorney's Fees and Costs

11        "When making a preliminary fairness determination of a proposed class action, the

12   court should assess the reasonableness of the attorney's fee award because an inordinate fee

13   may be the sign that counsel sold out the class's claims at a low value in return for the high

14   fee." *Lusk*, 2019 WL 7047891, at *8 (citation and quotation marks omitted).  Where a

15   defendant is willing to pay high fees, this "may also indicate that the relief in the settlement

16   undervalues the class's claims[.]" *Id.*  Thus, while the Court acknowledges that the

17   determination of attorney's fees may appropriately be deferred to the final approval stage, the

18   amount of attorney's fees is relevant to the determination of whether a settlement is fair,

19   reasonable, and adequate.

20        Here, the settlement agreement provides for an award of attorney's fees of up to

21   $216,666.66, representing 33 percent of the gross settlement amount. (ECF No. 43-4 at 13.)

22   This is above the benchmark for the Ninth Circuit. *See Hanlon*, 150 F.3d at 1029. However,

23   Plaintiff's counsel represents that they will request to be awarded 25 percent of the gross

24   settlement amount, and the remainder will be included in the distribution to the settlement

25   class. (ECF No. 43-1 at 21.)

26        In light of Plaintiff's counsel's representations, the Court finds that the proposed

27   attorney's fee award does not weigh against finding that the settlement is fair, reasonable, and

28   adequate at the preliminary approval stage. However, to the extent Plaintiff's counsel elects to

     request an attorney's fee award that exceeds the 25 percent benchmark, Plaintiff's counsel

1   should explain why special circumstances justify such a departure. *See Vizcaino v. Microsoft*

2   *Corp.,* 290 F.3d 1043, 1048 (9th Cir. 2002) (setting forth factors to be considered when

3   adjusting the 25% benchmark).

4      3.   <u>Class Representative Incentive Award</u>

5         A district court may award incentive payments to named plaintiffs in class action cases.

6   *Rodriguez,* 563 F.3d at 958–59. The purpose of incentive awards is to "compensate class

7   representatives for work done on behalf of the class, to make up for financial or reputational

8   risk undertaking in bringing the action, and, sometimes, to recognize their willingness to act as

9   a private attorney general." *Id.* To justify an incentive award, a class representative must

10  present "evidence demonstrating the quality of plaintiff's representative service," such as

11  "substantial efforts taken as class representative to justify the discrepancy between [his] award

12  and those of the unnamed plaintiffs." *Alberto v. GMRI, Inc*., 252 F.R.D. 652, 669 (E.D. Cal.

13  2008). Such incentive awards are particularly appropriate in wage-and-hour actions where a

14  plaintiff undertakes a significant reputational risk in bringing suit against her former employer.
    *Rodriguez,* 563 F.3d at 958-59.

15        Here, the settlement agreement provides for a maximum class representative incentive

16  award of $5,000.00. (ECF No. 43-4 at 12-13.) The motion indicates that Plaintiff will file an

17  application for the incentive award and submit a supporting declaration in connection with her

18  motion for final approval of the settlement, and any amount that is not awarded will be

19  included in the distribution to the settlement class. (ECF No. 43-1 at 10.)

20        The proposed incentive award represents approximately .8 percent of the total settlement

21  amount, and is less than fifty percent more than the estimated average settlement payment to

22  class members. (*See* ECF No. 43-3 at 5.) The Court will approve the incentive award on a

23  preliminary basis. At the final approval hearing, the Court will review Plaintiff's evidence that

24  the requested incentive award is warranted here, including evidence of the amount of time

25  Plaintiff spent on the litigation, the risks and burdens carried by Plaintiff as a result of the

26  litigation, and the particular benefit that Plaintiff provided to counsel and the class as a whole

27  throughout the litigation. *See Goodwin v. Winn Mgmt. Group LLC,* 2017 WL 3173006, at *12

28  (E.D. Cal. July 26, 2017) (citation omitted).

**B.      Certification of the Settlement Class**

As discussed below, the requirements for class certification in Rule 23(a) and (b) are satisfied here and preliminary certification of the settlement class is appropriate.

1.      Rule 23(a) Requirements

*Numerosity*

A proposed class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "The numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations." *Gen. Tel. Co. of the Nw. v. Equal Employment Opportunity Comm'n*, 446 U.S. 318, 330 (1980). Courts in the Ninth Circuit have found the requirement satisfied when the class is composed of as few as thirty-nine members. *See Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468, 474 (E.D. Cal. 2010) (citing *Jordan v. L.A. County*, 669 F.2d 1311, 1319 (9th Cir. 1982) (noting that class sizes of thirty-nine, sixty-four, and seventy-one are sufficient to satisfy the numerosity requirement), *vacated on other grounds*, 459 U.S. 810, 103 (1982)).

The proposed class contains 150 individuals. (ECF No. 43-1 at 14.) The Court finds this is sufficiently numerous that joinder of all class members is impracticable and the numerosity requirement of Rule 23(a)(1) is satisfied.

*Commonality*

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "The commonality preconditions of Rule 23(a)(2) are less rigorous than the companion requirements of Rule 23(b)(3)." *Hanlon*, 150 F.3d at 1019. "Indeed, Rule 23(a)(2) has been construed permissively." *Id.* "All questions of fact and law need not be common to satisfy the rule." *Id.* "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Id.* To satisfy commonality, there must be a "common contention . . . of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). A plaintiff can meet this burden by showing "[s]ignificant proof that an employer operated under a

1    general policy" of harmful conduct if the conduct "manifested itself in hiring and promotion

2    [and other employment] practices in the same general fashion . . .." *Id.* at 353 (quoting *Gen.*

3    *Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 159 n.15 (1982)).

4           Plaintiff argues that the class claims hinge on a single common contention that is capable

5    of class wide resolution, *i.e.* Defendant's common policy of excluding housing payments and

6    meals and incidentals payments from the regular rate of pay. (ECF No. 43-1 at 14.) Resolving

7    that common question will drive resolution of each claim asserted in this lawsuit. (*Id.*)

8           The Court finds that Plaintiff has demonstrated that the commonality requirements of

9    Rule 23(a)(2) are satisfied for purposes of preliminary certification of the settlement class.

10          *Typicality*

11          Rule 23(a)(3) requires that "the claims or defenses of the representative parties are

12   typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3); *see Armstrong v.*

13   *Davis*, 275 F.3d 849, 868 (9th Cir. 2001). This typicality requirement is satisfied "when each

14   class member's claim arises from the same course of events, and each class member makes

15   similar legal arguments to prove the defendant's liability." *Armstrong*, 275 F.3d at 868; *see*

16   *also Kayes v. Pac. Lumber Co.*, 51 F.3d 1449, 1463 (9th Cir. 1995) (claims are typical where

17   named plaintiffs have the same claims as other members of the class and are not subject to

18   unique defenses). While representative claims must be "reasonably co-extensive with those of

19   absent class members," they "need not be substantially identical." *Hanlon*, 150 F.3d at 1020;

20   *see also Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).

21          Plaintiff contends that she and all other members of the settlement class received

22   housing payments and meals and incidentals payments that were excluded from their regular

23   rates of pay and her claims are therefore typical. (ECF No. 43-1 at 15.) The Court finds that

24   Plaintiff's claims are reasonably co-extensive with the absent proposed class members and the

25   typicality requirement of Rule 23(a)(3) is satisfied.

26          *Adequacy of Representation*

27          Before the Court can certify a class, the Court must be satisfied that "the representative

28   parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).

     "[A] class representative must be part of the class and 'possess the same interest and suffer the

1   same injury' as the class members." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625-26

2   (1997) (citations omitted). "The proper resolution of this issue requires that two questions be

3   addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest with

4   other class members and (b) will the named plaintiffs and their counsel prosecute the action

5   vigorously on behalf of the class?" *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th

6   Cir. 2000), *as amended* (June 19, 2000) (citations omitted).

7       Plaintiff's counsel provides a declaration describing his firm's experience handling

8   employment, wage and hour, and class action lawsuits. (ECF No. 43-2 at 2-3.) Plaintiff's

9   counsel states that he is not aware of any conflicts between Plaintiff or his firm and the

10  settlement class. (*Id.* at 5.)

11      The Court finds that Plaintiff's counsel's representations are sufficient to satisfy the

12  adequacy of representation requirement at this stage. However, Plaintiff has not submitted a

13  declaration or other evidence describing her interests and any conflicts with the class or

14  describing what actions she has taken to prosecute this case vigorously on behalf of the class.

15  While the declaration of Plaintiff's counsel is sufficient for preliminary certification of the

16  class, in seeking final approval of the settlement, Plaintiff is encouraged to submit appropriate

17  evidence addressing any conflicts of interest and her involvement in this case.

18  2.    Rule 23(b) Requirements

19      Plaintiff seeks certification under Rule 23(b)(3), which requires that "the questions of

20  law or fact common to class members predominate over any questions affecting only

21  individual members, and that a class action is superior to other available methods for fairly and

22  efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); *see also Amchem*, 521 U.S.

23  at 615. The test of Rule 23(b)(3) is "far more demanding," than that of Rule 23(a). *Wolin v.*

24  *Jaguar Land Rover N. Am.*, LLC, 617 F.3d 1168, 1172 (9th Cir. 2010) (quoting *Amchem*, 521

25  U.S. at 623–24).

        *Predominance*

26      First, questions of law or fact common to class members must predominate over any

27  questions affecting only individual members. Fed. R. Civ. P. 23(b)(3). This "predominance

28  inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by

representation." *Hanlon*, 150 F.3d at 1022 (quoting *Amchem*, 521 U.S. at 623). "This analysis presumes that the existence of common issues of fact or law have been established pursuant to Rule 23(a)(2); thus, the presence of commonality alone is not sufficient to fulfill Rule 23(b)(3)." *Id.* ("In contrast to Rule 23(a)(2), Rule 23(b)(3) focuses on the relationship between the common and individual issues."). "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Id.* (quoting 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1778 (2d ed.1986)).

Plaintiff asserts that common questions predominate here because each class claim hinges on the common question of whether Defendant's uniform policy and practice of excluding housing payments and meals and incidentals payments from the regular rate of pay is unlawful. (ECF No. 43-1 at 16.) If this challenged policy and practice is unlawful, then liability will be established "in unison" as to each class member. (*Id.*) Conversely, if the challenged policies are lawful, each class members' claims fail. (*Id.*) The case "represents the classic case for treatment as a class action: that is, the commonality linking the class members is the dispositive question in the lawsuit." (*Id.*)

The Court agrees that the common claims among the class members predominate over any individualized questions and the claims appear to be ones that can be resolved for all members of the class in a single adjudication. Thus, the predominance requirement is met for purposes of preliminary certification of the settlement class.

*Superiority*

Under Rule 23(b)(3), a class action must be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The matters pertinent to this finding include: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." *Id.; see Amchem*, 521 U.S. at 616.

1    Although the motion does not expressly address the relevant factors under Rule 23(b)(3),

2    Plaintiff argues that where, as here, the lawsuit challenges the legality of a uniform policy of

3    excluding certain payments from the regular rate, courts have found that a class action is a

4    superior means of resolving the dispute. (ECF No. 43-1 at 17.) The Court finds that, in light of

5    the challenge to Defendant's uniform policy, a class action would be the superior method to

6    fairly and efficiently adjudicate the putative class members' claims.

7    **C.    Appointment of Settlement Administrator**

8    The motion requests that the Court appoint CPT Group, Inc., as settlement administrator

9    and preliminarily approve settlement administration costs of up to $20,000.00. (ECF No. 43-1

10   at 9-10.) Settlement administration will entail disseminating notice of the settlement,

11   processing requests for exclusion, calculating individual settlement payments, handling

12   disputes regarding individual settlement payments, issuing all payments under the settlement,

13   calculating and processing tax withholdings, and issuing pertinent tax forms. (*Id.* at 9.) Any

14   amount allocated to settlement administration fees and costs that is not used will be included in

15   the distribution to the settlement class. (*Id.* at 10.)

16   The Court finds that it is appropriate to appoint CPT Group, Inc. as settlement

17   administrator and to preliminarily approve settlement administration costs not to exceed

18   $20,000.00.

18   **D.    Notice Procedures**

19   For proposed settlements under Rule 23, "the court must direct notice in a reasonable

20   manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1);

21   *see also Hanlon*, 150 F.3d at 1025 ("Adequate notice is critical to court approval of a class

22   settlement under Rule 23(e)."). A class action settlement notice "is satisfactory if it generally

23   describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints

24   to investigate and to come forward and be heard." *Churchill Vill., LLC v. Gen. Elec.*, 561 F.3d

25   566, 575 (9th Cir. 2004) (internal quotations and citations omitted).

26   Plaintiff contends that the proposed notice complies with Rule 23 because all members

27   will be sent, via First Class Mail, a notice of the settlement and will have 45 days to opt-out,

28   object, or dispute the number of qualified workweeks attributed to them. (ECF No. 43-1 at 22.)

17

The notice is written in plain language and contains all information required under Rule 23. (*Id.*)

The Court has reviewed the proposed notice (*see* ECF No. 43-5) and it sufficiently provides notice in a reasonable manner to all class members who would be bound by the settlement. The proposed mail delivery is also appropriate under the circumstances. Thus, the Court will approve the proposed notice.

## IV.     CONCLUSION AND ORDER

Based on the foregoing, IT IS HEREBY ORDERED:

1.    Plaintiff's motion for preliminary approval of the class settlement (ECF No. 43) is GRANTED;

2.    The Court preliminarily finds that the terms of the settlement are fair, reasonable, and adequate pursuant to Federal Rule of Civil Procedure 23(e)(2);

3.    The settlement class satisfies the requirements of Rule 23(a) and (b)(3) and the following class is preliminarily certified under Rule 23(c)(1), for purposes of settlement: All non-exempt hourly healthcare professionals employed by MSSI in California at any time from February 19, 2015 and August 5, 2021 who worked overtime and received a meals and incidentals payment and/or a housing payment;

4.    The proposed class notice of settlement (ECF No. 43-5) is approved;

5.    CPT Group, Inc. is appointed as settlement administrator;

6.    Settlement administration cost of up to $20,000.00 are approved and the settlement administrator is directed to complete dissemination of the notice in accordance with the settlement; and

7.    The Court sets a final approval hearing for **May 20, 2022 at 10:00 AM** in Courtroom 10 (EPG) before Magistrate Judge Erica P. Grosjean, to determine whether the settlement should be granted final approval. The Court will also hear any requests for an incentive award and for attorney's fees and expenses. The motion for final approval of class action settlement and any motion for attorneys'

1    fees and costs shall be filed no later than 28 days before the final approval
2    hearing in accordance with Local Rule 230. The Court reserves the right to alter
3    the date of the final approval hearing without further notice to class members.
4    IT IS SO ORDERED.
5
6    Dated:   **January 24, 2022**                    /s/ Erica P. Grosjean
                                              UNITED STATES MAGISTRATE JUDGE
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28