UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERESA JUNKERSFELD, an individual on behalf of herself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MEDICAL STAFFING SOLUTIONS, INC.,<br><br>Defendant. | Case No.: 1:19-cv-00236−EPG<br><br>ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MOTION FOR ATTORNEYS' FEES<br><br>(ECF Nos. 48, 49) |

Before the Court are Plaintiff Teresa Junkersfeld's ("Plaintiff") motions for final approval of a class action settlement and for attorneys' fees. (ECF No. 43.) The parties have consented to the jurisdiction of a United States Magistrate Judge for all purposes, including entry of final judgment. (ECF Nos. 13, 16-17.) For the following reasons, the Court will grant Plaintiff's motions.

**I.  BACKGROUND**

**A.  Procedural History**

Defendant Medical Staffing Solutions, Inc. ("Defendant") is a staffing company that employs hourly healthcare workers on short-term travel assignments at medical facilities throughout California and elsewhere. (ECF No. 48-1 at 5.) Plaintiff was employed by Defendant

1

in Oakdale, California between January 2016, and April 2016. (*Id.*)

Plaintiff filed her complaint commencing this action on February 19, 2019. (ECF No. 1.) Plaintiff alleges that Defendant underpaid overtime by excluding the value of housing and meals payments and incidentals payments from workers' regular rates of pay. (*See id.*) The complaint asserts claims for: 1) failure to pay overtime wages pursuant to California Labor Code §§ 510, 1194; 2) unfair business practices pursuant to California Business & Professions Code §§ 17200, *et seq.*; 3) waiting time penalties pursuant to California Labor Code § 203; and 4) violation of the Fair Labor Standards Act pursuant to 29 US.C. §§ 201, *et seq.* (*Id.*) Defendant filed an answer on May 3, 2019. (ECF No. 5.)

In December of 2019, following formal and informal discovery, the parties reached a tentative settlement agreement contingent on Defendant's production of confirmatory discovery. (ECF No. 48-1 at 6.) After Defendant produced the confirmatory discovery, Plaintiff exercised her right to void the settlement. (*Id.* at 7.) On June 4, 2020, at the parties' request, the Court stayed the case pending the Ninth Circuit's decision in *Clarke v. AMN Services, LLC,* 987 F.3d 848 (9th Cir. 2021). (ECF No. 27.) The Court lifted the stay on March 10, 2021. (ECF No. 32.) The parties subsequently resumed settlement negotiations with the assistance of mediator Michael Russell. (ECF No. 48-1 at 7.) In August of 2021, following a full day of mediation, the parties reached an agreement on the material terms of a class settlement. (*Id.*) The parties executed a long-form settlement agreement in October of 2021. (*Id.*)

On October 21, 2021, Plaintiff filed a motion for preliminary approval of a class action settlement. (ECF No. 43.) On October 26, 2021, Defendant filed a statement of non-opposition to the motion. (ECF No. 44.) The Court held a hearing on the motion on November 19, 2021. (ECF No. 46.) On January 25, 2022, the Court entered an order granting preliminary approval of the class settlement and conditionally certifying the settlement class. (ECF No. 47.)

On April 22, 2022, Plaintiff filed the underlying motions for final approval of the class settlement and for an award of attorneys' fees. (ECF Nos. 48, 49.) Defendant did not file a response to the motions. On May 20, 2022, the Court held a hearing on the motions. (ECF No. 51.) Plaintiff's counsel Kye Pawlenko and Defendant's counsel Alexander Chemers appeared telephonically. (*Id.*) The Court did not receive any objections to the settlement and none of the

class members appeared at the hearing.

On June 8, 2022, the Court granted the parties leave to file a supplemental declaration addressing Federal Rule of Civil Procedure 23(e)(3). (ECF No. 52.) On June 8, 2022, counsel for Plaintiff filed a supplemental declaration in support of the motion. (ECF No. 53.)

**B.     Settlement Agreement**

The parties' settlement agreement defines the class as:

> All non-exempt hourly healthcare professionals employed by MSSI in California at any time from February 19, 2015 and August 5, 2021 who worked overtime and received a meals and incidentals payment and/or a housing payment.

(ECF No. 43-4 at 4, 10.) According to the motion, there are 150 individuals in the settlement class. (ECF No. 43-1 at 9.)

Defendant agrees to pay a non-reversionary settlement amount of $650,000.00, exclusive of Defendant's share of payroll taxes owed on the "wage" portion of the settlement amount, which Defendant will pay separately.[1] (ECF No. 43-4 at 11.) This amount includes a $5,000.00 service award to Plaintiff, attorneys' fees not to exceed $216,666.66, attorneys' costs not to exceed $15,000.00, and settlement administration costs not to exceed $20,000.00. (*Id.* at 12-13.) A total of $20,000.00 from the gross settlement is allocated to the payment of Private Attorney General Act ("PAGA") penalties, $15,000.00 of which is paid to the Labor and Workforce Development Agency ("LWDA") and $5,000.00 of which is included in the net settlement amount. (*Id.* at 12-13.) After these deductions, the balance of $432,500.00 will be distributed to class members. (ECF No. 43-1 at 11.)

Payments to settlement class members will be made pro rata based on a percentage equal to the number of each class member's overtime hours worked during the class period divided by the total number of all settlement class members' overtime hours worked during the class period. (ECF No. 43-4 at 12.) Each settlement class member's respective share will be calculated by multiplying the net settlement amount by this fraction. (*Id.*) According to the motion, the average individual settlement payment is estimated to be $2,883.00. (ECF No. 43-1

---

[1] The settlement agreement allocates 1/3 of the settlement amount as wages to be characterized as W-2 income and 2/3 as interest and penalties to be characterized as 1099 income. (ECF No. 43-4 at 14.)

at 11.)

All class members, except those who opt-out of the settlement, will automatically receive their eligible share without having to submit a claim form. (ECF No. 43-4 at 12.) Any shares that are not distributed because the class member elected to opt-out of settlement will be redistributed on a pro rata basis to the participating settlement class members. (*Id.*) Checks issued to participating settlement class members will remain negotiable for 180 days from the date of mailing. (*Id.* at 14-15.) The settlement administrator will void any check that remains uncashed after this time and the uncashed funds will be sent to the California State Controller's Office pursuant to California's procedures for unclaimed property. (*Id.* at 15.)

Defendant will provide the settlement administrator with the class list, including overtime hours worked and contact information, within 14 calendar days of preliminary approval of the settlement. (ECF No. 43-4 at 15.) The settlement administrator will mail the notice to all class members by first class mail within five business days of receipt of the class list. (*Id.*) Before mailing the notice, the settlement administrator will process the class list against the National Change of Address Database maintained by the United States Postal Service. (*Id.* at 16.) Notice packets that are not returned "undeliverable" will be presumed to have been delivered. (*Id.*) If a notice packet is returned undeliverable and a forwarding address is provided, then the settlement administrator will re-mail notice within three business days. (*Id.*) If no forwarding address is provided, the settlement administrator will employ a more substantive skip-tracing procedure to obtain updated address information and periodically remail the notice to those individuals for whom a new address is located. (*Id.*) If the notice is returned after skip-tracing and remailing occurs, there will be no further skip-tracing but the settlement class member will still be bound by the terms of the settlement. (*Id.*)

Settlement class members may opt out of the settlement, object to the settlement, or dispute the stated overtime hours worked within 45 days from the original mailing date of the notice. (ECF No. 43-4 at 16.) Opt-out requests and objections must be sent to the settlement administrator and will not be honored if postmarked after this deadline. (*Id.* at 16.) Settlement class members who opt-out of the settlement are not eligible to recover a share of the net settlement amount and will have no standing to object to the settlement. (*Id.*) Plaintiff provides a

proposed notice outlining the opt-out and objection processes and providing information regarding the final fairness hearing. (ECF No. 43-5.)

The settlement agreement releases Defendant and any parent, subsidiary, affiliate, predecessor or successor, agent, employee, officer, director, attorney, and healthcare facility clients from the following claims by settlement class members:

> any and all claims arising between February 19, 2015 and the preliminary approval date that were asserted in the operative Complaint on behalf of the Settlement Class or that could have been pled based on the legal theories and/or factual allegations in the operative Complaint, including, without limitation, all individual and representative claims for unpaid wages, statutory penalties, civil penalties, PAGA penalties, or other forms of relief, based on the failure to include per diem benefits in the regular rate.

(ECF No. 43-4 at 7.) Plaintiff also agrees to a broader general release of claims:

> As a material term of this Agreement, Named Plaintiff Teresa Junkersfeld, in her individual capacity and with respect to her individual claims only, hereby agrees to also generally release Defendant and any parent, subsidiary, affiliate, predecessor or successor, including but not limited to all agents, employees, officers, directors, attorneys, and healthcare facility clients thereof, from all claims, demands, rights, liabilities and causes of action of any and every nature and description whatsoever, known or unknown, asserted or that might have been asserted, including a waiver of California Civil Code § 1542. With respect to the General Release, Named Plaintiff Teresa Junkersfeld stipulates and agrees that, upon the execution of this Agreement, she shall be deemed to have, and by operation of the Final Judgment shall have, expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights and benefits of Section 1542 of the California Civil Code, or any other similar provision under state or federal law as to the generally released claims. Section 1542 provides as follows:
> A GENERAL RELEASE DOES NOT EXTENT TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, AND THAT IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

(ECF No. 43-4 at 18-19.)

## II. LEGAL STANDARDS

### A. Motion for Final Approval of Class Action Settlement

"A difficult balancing act almost always confronts a district court tasked with approving a class action settlement." *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015). "On the one hand, . . . 'there is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned.'" *Id.* (citations omitted). "But on the other hand, settlement

class actions present unique due process concerns for absent class members, and the district court has a fiduciary duty to look after the interests of those absent class members." *Id.* (citations and internal quotation marks omitted).

"To guard against this potential for class action abuse, Rule 23(e) of the Federal Rules of Civil Procedure requires court approval of all class action settlements, which may be granted only after a fairness hearing and a determination that the settlement taken as a whole is fair, reasonable, and adequate." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (footnote added); *Staton v. Boeing Co.*, 327 F.3d 938, 972 n.22 (9th Cir. 2003) (court's role is to police the "inherent tensions among class representation, defendant's interests in minimizing the cost of the total settlement package, and class counsel's interest in fees").

Rule 23(e)'s class settlement process generally proceeds in two phases. In the first phase, the court conditionally certifies the class, conducts a preliminary determination of the fairness of the settlement (subject to a more stringent final review), and approves the notice to be provided to the class. *Ontiveros v. Zamora*, 303 F.R.D. 356, 363 (E.D. Cal. 2014). The purpose of the initial review is to ensure that an appropriate class exists and that the agreement is non-collusive, without obvious deficiencies, and within the range of possible approval as to that class. *See True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052, 1062 (C.D. Cal. 2010); Newberg on Class Actions § 13:13 (5th ed. 2014).

In the second phase, the court holds a full fairness hearing where class members may present objections to class certification, or the fairness of the settlement agreement. *Ontiveros*, 303 F.R.D. at 363 (citing *Diaz v. Trust Territory of Pac. Islands*, 876 F.2d 1401, 1408 (9th Cir. 1989)). Following the fairness hearing, the court is to consider all of the information before it and confirm that class certification is appropriate, and that the settlement is fair, reasonable, and adequate. *See Valdez v. Neil Jones Food Co.*, 2015 WL 6697926, at * 8 (E.D. Cal. Nov. 2, 2015); *Miller v. CEVA Logistics USA, Inc.*, 2015 WL 4730176, at *3 (E.D. Cal. Aug. 10, 2015). "Any class member may object to the proposal if it requires court approval under this subdivision (e). The objection must . . . state with specificity the grounds for the objection." Fed. R. Civ. P. 23(e)(5)(A).

### B. Motion for Attorneys' Fees

When a negotiated class action settlement includes an award of attorneys' fees, courts evaluate the fee award in the overall context of the settlement. *Knisley v. Network Assocs.*, 312 F.3d 1123, 1126 (9th Cir. 2002). At the same time, a court "ha[s] an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *Bluetooth*, 654 F.3d at 941. Where, as here, fees are to be paid from a common fund, the relationship between the class members and class counsel "turns adversarial." *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1302 (9th Cir. 1994). As a result, the district court must assume a fiduciary role for the class members in evaluating a request for an award of attorneys' fees from the common fund. *Id.*; *Rodriguez*, 563 F.3d at 968. The Ninth Circuit has approved two methods for determining attorneys' fees in cases where the attorneys' fee award is taken from the common fund set aside for the entire settlement: the "percentage of the fund" method and the "lodestar" method. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) (citation omitted). The district court retains discretion in common fund cases to choose either method. *Id.*; *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 942 (9th Cir. 2015) (in common-fund class-action case, Ninth Circuit will "review a court's award of fees and costs to class counsel, as well as its method of calculation for abuse of discretion"). "Reasonableness is the goal" under either approach. *Fischel v. Equitable Life Assurance Soc'y of the U.S.*, 307 F.3d 997, 1007 (9th Cir. 2002).

Under the percentage of the fund method, the court may award class counsel a given percentage of the common fund recovered for the class. *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 949. In the Ninth Circuit, "the benchmark percentage is 25%." *Id.* "The benchmark percentage should be adjusted, or replaced by a lodestar calculation, when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors." *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990). Percentage awards of between twenty and thirty percent are common. *See Vizcaino*, 290 F.3d at 1047. Nonetheless, an explanation is necessary when the district court departs from the twenty-five percent

benchmark. *Powers v. Eichen*, 229 F.3d 1249, 1256–57 (9th Cir. 2000).

Factors courts may consider when assessing a requested percentage include:

> the extent to which class counsel achieved exceptional results for the class, whether the case was risky for class counsel, whether counsel's performance generated benefits beyond the cash settlement fund, the market rate for the particular field of law (in some circumstances), the burdens class counsel experienced while litigating the case (e.g., cost, duration, foregoing other work), and whether the case was handled on a contingency basis.

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 954–55 (internal quotation marks omitted). The Ninth Circuit has permitted courts to award attorneys' fees using this method "in lieu of the often more time-consuming task of calculating the lodestar." *Bluetooth*, 654 F.3d at 942.

In conducting the lodestar cross-check, the court determines the lodestar amount by multiplying a reasonable hourly rate by the number of hours reasonably spent litigating the case. *See Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 (9th Cir. 2001). The product of this computation, the "lodestar" amount, yields a presumptively reasonable fee. *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013); *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008).

> "Courts in the Ninth Circuit calculate an award of attorney's fees using the lodestar method, whereby a court multiplies the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Telles v. Li*, No. 5:11-CV-01470-LHK, 2013 WL 5199811, at *15 (N.D. Cal. Sept. 16, 2013). "In determining reasonable hours, counsel bears the burden of submitting detailed time records justifying the hours claimed to have been expended." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986). "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). A district court should also exclude from the lodestar fee calculation any hours that were not "reasonably expended," such as hours that are excessive, redundant, or otherwise unnecessary. *See id.* at 434.
>
> In assessing fee applications, the reasonable hourly rates are calculated according to the prevailing market rates in the relevant legal community. *Blum v. Stenson*, 465 U.S. 886, 895 (1984). Typically, the "relevant legal community" is the forum district and the local hourly rates for similar work should normally be employed. *Gonzalez*, 729 F.3d at 1205.

*Tenorio v. Gallardo*, 2019 WL 3842892, at *2 (E.D. Cal. Aug. 15, 2019) (string citations

omitted; certain internal quotation marks omitted).

## III. DISCUSSION

### A. Final Class Certification

The Court's order granting preliminary approval of the class settlement made the preliminary finding that the proposed settlement class satisfies the requirements of Rule 23(a) for purposes of settlement. (ECF No. 47 at 13-15.) The Court also made a preliminary finding that the proposed settlement class meets the predominance and superiority requirements of Rule 23(b)(3). (*Id.* at 15-17.) Thus, the class was conditionally certified for the purposes of settlement under Rule 23(c)(1). (*Id.* at 18.)

Plaintiff's motion explains that none of the class members have opted-out of the settlement. (ECF No. 48-1 at 11.) Additionally, as noted above, the Court did not receive any objections to the settlement. There is no indication that the Court's preliminary determination that the proposed settlement class should be certified was improper. Thus, for the same reasons set forth in the Court's order granting preliminarily certifying the class, the Court finds that the requirements for final class certification under Rule 23(a) and (b) have been satisfied. Therefore, the Court will certify the following class for settlement purposes:

> All non-exempt hourly healthcare professionals employed by MSSI in California at any time from February 19, 2015 and August 5, 2021 who worked overtime and received a meals and incidentals payment and/or a housing payment.

### B. Final Settlement Approval

1. Rule 23(e)(1): Adequacy of Notice

Under Rule 23(e)(1), the parties must provide notice to the class. "The court must direct notice in a reasonable manner to all class members who would be bound by the proposal . . . ." Fed. R. Civ. P. 23(e)(1)(B). "Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.' " *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (quoting *Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1338, 1352 (9th Cir. 1980)). Any notice of the settlement sent to the class should alert class members of "the opportunity to opt-out and individually pursue any state law remedies that might provide a better opportunity for

recovery." *Hanlon*, 150 F.3d at 1025.

The Court previously reviewed the class notice and found it to be reasonable and appropriate. (ECF No. 47 at 17-18.) The settlement administrator provides a declaration in support of Plaintiff's motion explaining that it initially mailed the class notice to 147 settlement class members, and 23 notices were returned without a forwarding address. (ECF No. 48-4 at 3.) There were ultimately five undeliverable notices with no forwarding address provided or no new address found through skip trace. (*Id.*)

In light of the settlement amount, further efforts to locate the remaining five settlement class members may be prohibitively expensive and the Court thus finds that adequate notice was provided to the class here. *See Silber v. Mabon*, 18 F.3d 1449, 1453–54 (9th Cir. 1994) (court need not ensure all class members receive actual notice, only that "best practicable notice" is given); *Winans v. Emeritus Corp.*, 2016 WL 107574, at *3 (N.D. Cal. Jan. 11, 2016) ("While Rule 23 requires that 'reasonable effort' be made to reach all class members, it does not require that each individual actually receive notice."). The Court accepts the reports of the settlement administrator and finds sufficient notice has been provided pursuant to Rule 23(e)(1).

    2.    <u>Rule 23(e)(2): Fair, Reasonable, and Adequate</u>

To be approved, a class-action "settlement must be 'fair, reasonable, and adequate.'" *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 963 (9th Cir. 2009) (quoting Fed. R. Civ. P. 23(e)(2)). To make that determination, a court must consider whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>     (i) the costs, risks, and delay of trial and appeal;
>     (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>     (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>     (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

\\\

a. *Adequate Representation*

Resolution of whether the class representative and class counsel have adequately represented the class "requires that two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000), as amended (June 19, 2000) (citations omitted).

In its order granting preliminary approval, the Court determined that class counsel adequately represented the class. (ECF No. 47 at 14-15.) However, Plaintiff did not submit a declaration or other evidence describing her involvement in this case at the preliminary approval stage, and was encouraged to do so in connection with any request for final approval of the settlement. (*Id.* at 15.)

Here, Plaintiff provides a declaration estimating that she spent more than 20 hours assisting her attorneys in responding to discovery, gathering and reviewing documents and communications, and participating in phone and email conferences. (ECF No. 48-7 at 2-3.) In connection with the motion for preliminary approval, Plaintiff's counsel also provided a declaration stating that he is not aware of any conflicts between Plaintiff or his firm and the settlement class. (ECF No. 43-2 at 2-3.) Having considered these declarations as well as the findings at preliminary approval, the Court concludes that Plaintiff and class counsel have adequately represented the settlement class.

b. *Negotiations at Arms' Length*

As described in the order granting preliminary approval, the settlement in this case was reached after a full day of mediation with mediator Michael Russell and after the parties engaged in both formal and informal discovery. (ECF No. 47 at 10-11.) The Court finds that the settlement was negotiated at arms' length and this factor therefore favors final approval.

c. *Adequacy of Relief*

The Court must also consider the adequacy of the relief, considering the costs, risks and delay of trial and appeal; the effectiveness of distributing relief and processing class-member

claims; the terms of any proposed award of attorneys' fees; and any other agreements made in connection with the proposal.  Fed. R. Civ. P. 23(e)(2)(C).  In considering the amount offered in the settlement, "[t]he proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators. . . . [T]he very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (internal quotation marks and citation omitted). Instead, the Ninth Circuit (and district courts in it) have "long deferred to the private consensual decision of the parties." *Rodriguez*, 563 F.3d at 965. As the Ninth Circuit explained in *Rodriguez*:

> the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.

*Id.*

The proposed settlement recovers $650,000.00,[2] which Plaintiff's counsel estimates is approximately 74 percent of the total amount of overtime that could be recovered if the claims were successfully litigated. (ECF No. 43-1 at 19.) The estimated average payout is over $3,000.00 per settlement class member. (ECF No. 48-1 at 5.) Plaintiff's counsel further

---

[2] Of the $650,000.00 settlement amount, the parties have allocated $20,000.00 to PAGA penalties. A total of $15,000.00, or 75 percent of the PAGA penalties, will be paid to the LWDA and $5,000.00, or 25 percent of the PAGA penalties, will be distributed to the class. Although Plaintiff's complaint does not allege a PAGA claim (see ECF No. 1), the settlement agreement specifically releases class members' claims for PAGA penalties based on Defendant's failure to include per diem benefits in the regular rate (see ECF No. 43-4 at 7). Although Plaintiff's briefing does not address the reasonableness of the PAGA penalty amounts (*see* ECF No. 48-1), the PAGA settlement is approximately 3% of the proposed total settlement amount, which is similar to settlements that have been approved by other courts. *See Junkersfeld v. Medical Staffing Solutions, Inc.,* 2022 WL 223964, at , *e.g., Ahmed v. Beverly Health & Rehab. Servs., Inc*., 2018 WL 746393, at *10 (E.D. Cal. 2018) (approving PAGA settlement of $4,500, or 1% of the total settlement amount); *Hicks v. Toys 'R' Us–Delaware, Inc*., 2014 WL 4703915, at *1 (C.D. Cal. 2014) (approving PAGA settlement of $5,000 or 0.12% of the total settlement amount); *Schiller v. David's Bridal, Inc*., 2012 WL 2117001, at *2 (E.D. Cal. 2012) (approving PAGA settlement of $7,500 or 0.14% of the total settlement amount); *Franco v. Ruiz Food Prods., Inc.*, 2012 WL 5941801 at *14 (E.D. Cal. 2012) (approving PAGA settlement of $10,000, or 0.4% of total settlement amount); *Garcia v. Gordon Trucking*, 2012 WL 5364575 at *3 (E.D. Cal. 2012) (approving PAGA settlement of $10,000 or 0.27 % of the total settlement amount); *Munoz v. UPS Ground Freight, Inc.*, 2009 WL 1626376, at *1 (N.D. Cal. 2009) (approving PAGA settlement of $60,000 or 2% of the total settlement amount); *Hopson v. Hanesbrands Inc.*, 2009 WL 928133, at *9 (N.D. Cal. 2009) (approving PAGA settlement of $1,500 or .037% of the total settlement amount); *Nordstrom Com'n Cases*, 186 Cal. App. 4th 576, 589 (2010) (approving PAGA settlement and release allocating $0 to PAGA claim).

explained the calculations of Defendant's maximum exposure at the hearing on the motion for preliminary approval. (*Id.*) Specifically, Plaintiff's counsel calculated Defendant's maximum exposure to be $875,512.00, which was discounted to the $650,000.00 settlement amount in light of Defendant's defenses. Particularly, *Clarke* relied on facts that are not present in the instant case, including the fact that per diems were paid to all employees regardless of traveling and employees were allowed to bank hours worked to avoid an offset. These factors could be considered dispositive. However, the amount recovered is a substantial portion of Defendant's maximum potential recovery and the discount to reflect the costs, risks, and delays of trial and appeal in this case is relatively modest. This weighs in favor of finding that the relief provided by the settlement is adequate.

Further, the proposed method of distribution appears to be effective. The settlement administrator has gathered the settlement class members' addresses and mailed the notice packet. Only five of the 147 notice packets were returned undeliverable. (ECF No. 48-4 at 3-4.) The settlement administrator is experienced in claim administration and will issue all settlement payments and process the necessary tax withholdings and forms. (ECF No. 48-1 at 8.) The Court is therefore satisfied that the distribution will be made effectively.

With respect to the award of attorneys' fees, as discussed further below the requested award is reasonable and within the Ninth Circuit's benchmark. For the same reasons that the Court grants attorneys' fees to counsel, the Court also finds that this factor favors a finding that the settlement is adequate.

Counsel declares that there are no agreements between Plaintiff and her counsel other than "a traditional written retainer agreement" and the settlement agreement. (ECF No. 53). This does not indicate any collusion or any unequal treatment among the parties.

In light of the foregoing, the Court finds that the relief provided by the settlement is adequate.

> d. *Equitable Treatment of Class Members*

Finally, other than with respect to Plaintiff's service award, all class members are treated the same. Their distributions are based on the number of overtime hours they worked during the

class period. (*See* ECF No. 48-1 at 10.) This is an equitable distribution. Further, as discussed below, the requested class representative service award is reasonable. Thus, this factor also favors a finding that the settlement is fair, reasonable, and adequate.

3. Rule 23(e)(3): Other Agreements

As discussed *supra*, counsel filed a statement concerning agreements required to be identified under Rule 23(e)(3). (ECF No. 53.) The Court finds no reason to reject the settlement based on the identified agreements.

4. Rule 23(e)(4): New Opportunity to be Excluded

As the class was not certified under Rule 23(b)(3), this factor is not relevant.

5. Rule 23(e)(5): Objections

The Court must consider class members' objections in determining whether the proposal is fair, reasonable and adequate. Fed. R. Civ. P. 23(e)(5). Here, there were no objections to the settlement and no requests for exclusion. (ECF No. 48-4 at 4.)

Having weighed the relevant factors under Rule 23(e), and for the reasons discussed above, the Court finds that final approval of the settlement is appropriate.

**C.  Attorneys' Fees and Costs**

Class counsel seeks a fee award of $162,500.00, representing 25% of the common settlement fund. (ECF No. 49 at 3.) This is within the 25% benchmark in this circuit, and there is no indication that a downward adjustment is warranted in this case, particularly in light of the strength of the recovery. The amount sought is proportionate to the results achieved, any fees not awarded revert to the class fund, and there are no other signs of collusion, such as a clear-sailing provision, that would indicate that class counsel has pursued self-interest above that of the settlement class in negotiating the settlement.

Class counsel calculates the lodestar cross-check to be $157,450.00, representing a modest multiplier of less than 1.1. (ECF No. 49 at 5.)  Counsel Kye Pawlenko provided a declaration stating that he has been practicing since 2005 and his partner, Matthew B. Hayes, has been practicing since 2001. (ECF No. 48-3 at 2.) The billing records submitted in support of Mr. Pawlenko's declaration indicate that he bills at a rate of $600.00 per hour and that Mr.

14

Hayes bills at a rate of $650.00 per hour. (ECF No. 48-5.) Counsel billed a total of approximately 256.2 hours, for a blended hourly rate of approximately $615.00.[3]

The proposed hourly rates have not been adjusted for the relevant locality. Courts in this district have "previously accepted as reasonable for lodestar purposes hourly rates of between $370 and $495 for associates, and between $545 and $695 for senior counsel and partners." *Quiroz v. City of Ceres*, 2019 WL 1005071, at *7. However, for purposes of assessing reasonableness, and given that the total amount of fees sought are within the 25% benchmark, the Court acknowledges that the lodestar comparison is also reasonable. Utilizing the proposed hourly rates[4] and an expenditure of 256.2 hours results in a lodestar of $157,450.00. This reflects a modest multiplier and suggests that the fee award of $162,500.00 is appropriate in this case.

Accordingly, the Court will grant Plaintiff's counsel's motion for attorneys' fees and award $162,500.00.

### D.     Litigation Expenses

"[A]n attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation expenses from that fund." *Sanchez v. Frito-Lay, Inc.*, 2015 WL 4662636, at *20 (E.D. Cal. Aug. 5, 2015), *report and recommendation adopted*, 2015 WL 5138101 (E.D. Cal. Aug. 26, 2015); *accord Smith v. American Greetings Corp.*, 2016 WL 2909429, *9 (N.D. Cal. May 19, 2016). "These costs can include reimbursements for: (1) meals, hotels, and transportation; (2) photocopies; (3) postage, telephone, and fax; (4) filing fees; (5) messenger and overnight delivery; (6) online legal research; (7) class action notices; (8) experts, consultants, and investigators; and (9) mediation fees." *Carlin v. DairyAmerica, Inc.*, 380 F. Supp. 3d 998, 1023-24 (E.D. Cal. 2019).

Counsel seeks to recover costs for court filing fees, process server fees, expert fees, mediation fees, postage, copying costs, and legal research costs. Each of these types of

---

[3] The billing records submitted in support of the motion do not contain a total of the hours worked on the case, or a breakdown of total hours worked per attorney. (*See* ECF No. 48-5.)

[4] In finding the lodestar comparison reasonable, the Court expresses no opinion on whether these proposed hourly rates would be recoverable solely as reasonable attorneys' fees.

expenses is collectable. *Carlin*, 380 F. Supp. 3d at 1023-24. The Court thus finds that recovery of $6,764.60 in costs as requested in the motion is appropriate.

### E.  Service Award

A district court may award incentive payments to named plaintiffs in class action cases. *Rodriguez*, 563 F.3d at 958–59. To justify an incentive award, a class representative must present "evidence demonstrating the quality of plaintiff's representative service," such as "substantial efforts taken as class representative to justify the discrepancy between [his] award and those of the unnamed plaintiffs." *Alberto v. GMRI, Inc*., 252 F.R.D. 652, 669 (E.D. Cal. 2008).  Such service awards are particularly appropriate in wage-and-hour actions where a plaintiff undertakes a significant reputational risk in suing her former employer. *Rodriguez*, 563 F.3d at 958-59.

Here, Plaintiff seeks a $5,000 enhancement. Plaintiff declares that she spent more than 20 hours assisting her attorneys in responding to discovery, gathering and reviewing documents and communications, and participating in phone and email conferences. (ECF No. 48-7 at 2-3.) Additionally, there was a risk to Plaintiff that filing the lawsuit would negatively impact her ability to find further employment in the travel nursing industry. (*Id.*) As part of the settlement, Plaintiff entered into a general release that is much broader than the other settlement class members' release. (*Id.* at 3.) The proposed service award further reflects less than one percent of the total settlement value, and is not disproportionate to the average $3,000.00 payment that settlement class members will receive. Thus, the Court will grant Plaintiff's request for a service award of $5,000.00

### F.  CONCLUSION AND ORDER

Based on the foregoing, IT IS HEREBY ORDERED:

1. Plaintiff's motion for final approval of the class settlement (ECF No. 48) and motion for attorneys' fees and costs (ECF No. 49) are GRANTED;
2. The Court finds that the terms of the settlement are fair, reasonable, and adequate pursuant to Federal Rule of Civil Procedure 23(e)(2);
3. The settlement class satisfies the requirements of Rule 23(a) and (b)(3) and the

following class is certified under Rule 23(c)(1), for purposes of settlement: All non-exempt hourly healthcare professionals employed by MSSI in California at any time from February 19, 2015 and August 5, 2021 who worked overtime and received a meals and incidentals payment and/or a housing payment;

4. Plaintiff Theresa Junkersfeld is appointed as representative of the settlement class;

5. Hayes Pawlenko LLP are appointed as counsel for the settlement class;

6. Class counsel Hayes Pawlenko LLP are awarded attorneys' fees in the amount of $162,500.00 and costs in the amount of $6,764.60, to be paid in accordance with the terms of the settlement agreement;

7. Plaintiff Theresa Junkersfeld is granted a service award in the amount of $5,000.00 to be paid in accordance with the terms of the settlement agreement;

8. Settlement administrator CPT Group, Inc. shall be paid settlement administration fees and expenses in the amount of $7,500.00 to be paid in accordance with the terms of the settlement agreement;

9. The Court shall retain jurisdiction over this action and the parties for the purposes of enforcing the terms and conditions of the settlement agreement; and

10. The Clerk of Court is directed to close this case.

IT IS SO ORDERED.

Dated: **June 28, 2022**          /s/ Erica P. Grosjean
                                   UNITED STATES MAGISTRATE JUDGE

17